1 **WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| COLONIAL SAVINGS, FA, <br><br> Plaintiff and Counter-Defendant, <br><br> vs. <br><br> DAVID GULINO and MICHELE REAGAN, <br><br> Defendants and Counter-Plaintiffs, <br><br> vs. <br><br> MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., <br><br> Cross-Defendant | No. CV-09-1635-PHX-GMS <br><br> **ORDER** |

Three motions, each filed by Colonial Savings, FA ("Colonial Savings") and Mortgage Electronic Registration Systems ("MERS"), are pending before the Court: (1) the Motion to Dismiss Counter-Claims (Dkt. # 20); (2) the Motion to Strike Portions of Counter-Claims (Dkt. # 21); and (3) the Motion to Strike Portions of the Answer and Certain Affirmative Defenses. For the reasons discussed below, the Court grants the Motion to Dismiss in part and denies it in part. The Motions to Strike are denied.[1]

---

[1] The parties' requests for oral argument are denied as the Court has determined that oral argument will not aid in its decision. *See Lake at Las Vegas Investors Group, Inc. v. Pac. Malibu Dev.*, 933 F.2d 724, 729 (9th Cir. 1991).

**BACKGROUND**

Defendants and Counter-Plaintiffs David Gulino and Michelle Reagan ("Borrowers") obtained a mortgage from Homecomings Financial for $636,000 in February 2006. In May of 2007, Borrowers refinanced their mortgage by obtaining a loan from Plaintiff-Counter Defendant Colonial Savings in the amount of $660,000. In the loan agreement, Colonial Savings was named as the servicer of the loan, and MERS was named as the nominal beneficiary of the deed of trust.

After making payments in accordance with the provisions of the loan agreement for two years, Borrowers sent a letter to Colonial Savings in July 2009 requesting rescission of the loan. In that letter, Borrowers alleged that Colonial Savings failed to make disclosures required by the Truth in Lending Act, 15 U.S.C. 1601, *et seq.* ("TILA"). Specifically, Borrowers asserted that Colonial Savings failed to disclose certain fees totaling $10,167 and failed to disclose that its underwriter inflated Borrowers' monthly income by approximately 12 percent. Borrowers further alleged in their letter that the "Notice of Right to Cancel" given to them at closing was invalid under TILA because it was misdated and provided for a two-day rescission period, rather than the three-day period required under the statute.

Shortly after receiving the letter, Colonial Savings filed a Complaint in this Court, seeking declaratory relief that Borrowers were not entitled to rescission. Borrowers responded by filing a Counterclaim against Colonial Savings and MERS. (Dkt. # 17.) After Colonial Savings and MERS moved to dismiss the Counterclaim, Borrowers filed an Amended Counterclaim as a matter of course, alleging the following causes of action: (1) Breach of Contract (Count Two);[2] Declaratory Relief (Count Three); Violations of TILA (Count Four); Violations of the Real Estate Settlement Procedures Act, 12 U.S.C. § 2601, *et seq.* ("RESPA") (Count Five); Fraud (Count Six); Injunction (Count Seven); and Quiet Title, pursuant to § 12-1101, *et seq.* (Count Eight). (Dkt. # 27.) Several of these claims further allege that Colonial Savings and MERS refuse to produce the original note securing

---

[2]The Amended Counterclaim does not include a "Count One." (*See* Dkt. # 27.)

Borrowers' mortgage and that MERS is not a valid beneficiary with standing to enforce the note. (*Id.*) Colonial Savings and MERS now move to dismiss each of these counter/cross claims (Dkt. # 20); they also move to strike various portions of Borrowers' claims and affirmative defenses (Dkt. ## 21–22).[3] To the extent that the Court denies the motion to strike, Colonial Savings and MERS move for a more definite statement of Borrowers' affirmative defenses. (*Id.*)

## DISCUSSION

**I.  Colonial Savings's and MERS's Motions to Dismiss Are Granted in Part and Denied in Part.**

### A.  Legal Standard: Motion to Dismiss

To survive a dismissal for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6), a complaint must contain more than "labels and conclusions" or a "formulaic recitation of the elements of a cause of action[;]" it must contain factual allegations sufficient to "raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "The pleading must contain something more . . . than . . . a statement of facts that merely creates a suspicion . . . [of] a legally cognizable right of action." *Id.* While "a complaint need not contain detailed factual allegations . . . it must plead 'enough facts to state a claim to relief that is plausible on its face.'" *Clemens v. DaimlerChrysler Corp.*, 534 F.3d 1017, 1022 (9th Cir. 2008) (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows

---

[3]Colonial Savings and MERS have also requested consideration of several documents related to the loan agreement. In resolving a motion to dismiss, the Court may consider the "contents of the complaint" and "evidence on which the complaint 'necessarily relies' if: (1) the complaint refers to the document; (2) the document is central to the plaintiff's claim; and (3) no party questions the authenticity of the copy attached." *Marder v. Lopez*, 450 F.3d 445, 448 (9th Cir. 2006). In addition, courts may consider material outside the complaint that is properly the subject of judicial notice. *See Levine v. Diamanthuset, Inc.*, 950 F.2d 1478, 1483 (9th Cir. 1991). In this case, neither party disputes the authenticity of these documents, and they do not object to their consideration. Thus, to the extent that the relevant documents are incorporated by reference or are subject to judicial notice, the Court has considered them as appropriate in resolving the pending motions.

the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009) (citing *Twombly*, 550 U.S. at 556). The plausibility standard "asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 555) (internal citations omitted).

When analyzing a complaint for failure to state a claim under Rule 12(b)(6), "[a]ll allegations of material fact are taken as true and construed in the light most favorable to the nonmoving party." *Smith v. Jackson*, 84 F.3d 1213, 1217 (9th Cir. 1996). In addition, the Court must assume that all general allegations "embrace whatever specific facts might be necessary to support them," *Peloza v. Capistrano Unified Sch. Dist.*, 37 F.3d 517, 521 (9th Cir. 1994), but the Court will not assume that the plaintiff can prove facts different from those alleged in the complaint, *see Associated Gen. Contractors of Cal. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983); *Jack Russell Terrier Network of N. Cal. v. Am. Kennel Club, Inc.*, 407 F.3d 1027, 1035 (9th Cir. 2005). Similarly, legal conclusions couched as factual allegations are not given a presumption of truthfulness, and "conclusory allegations of law and unwarranted inferences are not sufficient to defeat a motion to dismiss." *Pareto v. FDIC*, 139 F.3d 696, 699 (9th Cir. 1998).

### C.    Analysis of Borrowers' Claims Fail Under Rule 12(b)(6)

Applying these legal principles, Borrowers' TILA and RESPA claims survive the Motion to Dismiss. Borrowers' other claims, however, are dismissed with leave to amend.

**(1) Failure to Present the Note**

Several of Borrowers' claims revolve around the allegation that Colonial Savings and MERS are unable to provide information regarding who owns the note or who is otherwise entitled to enforce it. (*See* Dkt. # 24 at 3.) This issue, however, is not sufficiently at issue to warrant a declaratory judgment. *See* 28 U.S.C. § 2201; Ariz. Rev. Stat. § 12-1832(a).

To the extent that Borrowers argue that neither Colonial Savings nor MERS can foreclose on the note and/or deed of trust because neither actually possess it, another Division of this Court has already rejected that argument, and this Court agrees with its analysis. *See Mansour v. Cal-Western Reconveyance Corp.*, 618 F. Supp.2d 1178, 1181 (D. Ariz. 2009) (holding that Arizona law "do[es] not require presentation of the original note before commencing foreclosure proceedings"). Relying on Ariz. Rev. Stat. § 47-3301, the *Mansour* court held, "The UCC pertaining to negotiable instruments, as codified in Arizona at title 47, chapter 3, provides that 'persons entitled to enforce an instrument [include] the holder of the instrument, a nonholder in possession of the instrument who has the rights of a holder[,] *or a person not in possession of the instrument who is entitled to enforce the instrument pursuant to § 47-3309.*'" *Id.* (internal quotation marks omitted); *see also Silvas v. GMAC Mortg.*, 2009 WL 4573234, at *8 (D. Ariz. Dec. 1, 2009) (rejecting a similar claim premised on a lender's failure to present the note to the borrower).

Borrowers also contend that any encumbrance on their property is not valid because it cannot be enforced by Colonial Savings and/or MERS and that they are entitled to a declaratory judgment to this effect. Nonetheless, even if the Court were to disregard *Mansour* and conclude that the Deed of Trust could not be enforced by Colonial Savings and MERS, that does not mean that no party or parties could enforce the deed of trust—thus, this issue is not ripe for decision in this case. Similarly, to the extent Borrowers argue that Colonial Savings and MERS are not entitled to enforce the note, whether or not they are in possession of it, that issue is not properly before the Court as Borrowers do not allege that Colonial Savings or MERS has attempted to foreclose on Borrowers' property.

**(2) Claims Based on MERS's Status as Beneficiary**

The parties also devote a substantial portion of their briefs to Borrowers' contention that MERS is not a valid beneficiary under Arizona law. According to Borrowers, MERS's status as beneficiary renders the loan at issue invalid. Borrowers further cite a recent Nevada bankruptcy decision for the position that "MERS does not have standing" or any "rights . .

. to any payments, to any servicing rights, or to . . . the propert[y] secured by the loan[]." *See In re Mitchell*, 2009 WL 1044368, at \*3 (Bankr. D. Nev. Mar. 31. 2009).

The Court, however, need not determine whether MERS is a valid beneficiary or whether it has standing to enforce rights pursuant to loan agreement between Borrowers and Colonial Savings. MERS is not attempting to enforce certain rights under the loan. (*See* Dkt. # 27.) It is further undisputed that MERS has no rights under the loan while Borrowers are current on their mortgage payments—which they are. (*See* Dkt. # 27 at ¶ 19.) Inasmuch as MERS has not attempted to enforce any rights under the loan and because it cannot attempt to do so while Borrowers are current, MERS status as a valid beneficiary is immaterial to the Borrowers' claims.

### (3) Breach of Contract

Borrowers' breach of contract claim also fails. In their Amended Counterclaim, Borrowers contend that Colonial Savings breached the loan agreement for two reasons. First, Borrowers argue that Colonial Savings posed as the initial lender, even though the source of funds allegedly came from other investors. Second, Borrowers argue that Colonial Savings has failed to provide proof that Borrowers' monthly payments are actually being applied to their mortgage. (*See* Dkt. # 27 at 23.) Neither allegation successfully states a claim for breach.

To state a breach of contract claim under Arizona law, a complainant must allege the existence of a contract, breach thereof, and resulting damages. *Clark v. Compania Ganadera De Cananea, S.A.*, 95 Ariz. 90, 94, 387 P.2d, 235, 238 (1963); *see also Commercial Cornice & Millwork, Inc. v. Camel Constr. Servs. Corp.*, 154 Ariz. 34, 38, 739 P.2d 1351, 1355 (Ct. App. 1987) (citing *City of Tucson v. Superior Ct.*, 116 Ariz. 322, 324, 569 P.2d 264, 266 (Ct. App. 1977)).To the extent that Borrowers allege that Colonial Savings was not the source of funding, that claim fails. Borrowers do not complain that they never received the proceeds of the loan. Instead, the pleadings clearly provide that Borrowers used the $660,000 that they obtained under the loan agreement to refinance their prior mortgage. And while Borrowers contend that they "could have shopped" for a better loan if they had known that Colonial

1  Savings was "posing as the initial lender,"[4] any misconduct giving rise to this alleged harm
2  occurred *before* the formation of the loan agreement. *See, e.g.*, *Swanstrom v. Boeing Co.*,
3  2005 WL 1719896, at *2 (W.D. Wash. July 25, 2005) ("[I]t is a settled principle that conduct
4  occurring prior to the formation of a contract cannot be the basis for a breach of contract
5  claim.").

6  Borrowers' breach of contract claim also fails to the extent that it is based on Colonial
7  Savings's alleged failure to prove that the Borrowers' payments are being applied to their
8  mortgage. Borrowers do not allege that the agreement between the parties required Colonial
9  Savings to provide this type of information. And though the parties provide the agreement
10 for the Court's review (Dkt. # 20, Ex. A), Borrowers fail to direct the Court's attention to the
11 provisions that were allegedly breached. *See Silvas*, 2009 WL 4573234, at *4 (dismissing a
12 breach of contract claim against a mortgage company where the plaintiff failed to point to
13 the relevant provisions of the contract that were allegedly breached). Similarly, while
14 Borrowers contend that the Colonial Savings breached the contract by selling or securitizing
15 the loan, Borrowers fail to point to any contract provision that prohibited Colonial Savings
16 from doing so. *See id.* Instead, it appears that Colonial Savings was explicitly authorized to
17 sell or transfer the loan. Borrowers' Breach of Contract Claim is therefore dismissed with
18 leave to amend.

### (4) Implied Covenant of Good Faith and Fair Dealing

20 Borrowers' claim that Colonial Savings violated the implied covenant of good faith
21 and fair dealing likewise fails. Although the covenant of good faith and fair dealing is legally
22 implied in every contract, *Rawlings v. Apodaca*, 151 Ariz. 149, 153, 726 P.2d 565, 569
23 (1986), the covenant "does not extend beyond the express terms of the contract at issue." *Best*

---

[4]To the extent that this argument can be read as a claim for fraud, Borrowers have not pled facts with the particularity required by Federal Rule of Civil Procedure 9(b). *See Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1124 (9th Cir. 2009) ("Averments of fraud" must also "be accompanied by the who, what, when, where, and how of the misconduct charged.") (internal quotation marks omitted).

*v. Henderson*, 2008 WL 2154795, at *5 (Ariz. Ct. App. May 20, 2008). Here, Borrowers contend that Colonial Savings violated the covenant of good faith through its failure to disclose whether the Borrowers' payments are being properly applied to the balance of their mortgage.

Borrowers, however, have not properly alleged this claim under *Twombly* and *Iqbal*. *See* 550 U.S. at 555 (requiring sufficient factual allegations that "raise a right to relief above the speculative level"); *Iqbal*, 129 S. Ct. at 1949 (holding that a party must allege sufficient factual allegations that "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged"). Borrowers fail to adequately explain the factual basis for their belief that Colonial Savings has not reduced the balance of the loan by the amount of Borrowers' payments. Borrowers also fail to explain what type of proof regarding their mortgage payments has been withheld by Colonial Savings. It appears that Borrowers are concerned that their payments are not being applied to the balance of their mortgage because the mortgage has been securitized and because their payments, along with the payments of other borrowers, are being applied to benefit a securitized pool of mortgages. Borrowers fail, however, to explain how securitization is an indication that the balance of their loan is not being reduced by the amount of Borrowers' monthly payments. *See Silvas*, 2009 WL 4573234, at *5 (rejecting a claim that a lending institution breached a loan agreement by securitizing and cross-collateralizing a borrower's loan). Because Borrowers' allegations are insufficient to state a claim for breach of the implied covenant of good faith and fair dealing, Borrowers' claim is dismissed with leave to amend.

### (5) TILA

Borrowers have adequately pled a TILA claim for rescission. Their claim for damages, however, appears to be barred by the applicable statute of limitations.

*(i) Rescission:* TILA contains detailed disclosure requirements for consumer loans. 15 U.S.C. § 1635(a). Specifically, lenders are required to provide each borrower with notice of his or her right to rescind the transaction within three business days after closing. 12 C.F.R. 226.23(a)(3). A lender's violation of TILA allows the borrower to rescind a consumer

loan secured by the borrower's primary dwelling. 15 U.S.C. § 1635(a). Even "[t]echnical or minor violations of TILA . . ., as well as major violations," are sufficient to "impose liability on the creditor and entitle the borrower to rescind." *Semar v. Platte Valley Fed. Sav. & Loan Ass'n*, 791 F.2d 699, 704 (9th Cir. 1986). Where a lender fails to provide the proper notice, the borrower can rescind the transaction up to three years after closing. *Id.* (citing *Williams v. Lafferty*, 698 F.2d 767, 768–69 (5th Cir. 1983) (holding that the omission of the expiration date for rescission, though a purely technical violation, entitled the plaintiff to rescind the loan agreement for up to three years, without regard to whether the omission was material). To state a claim for rescission under TILA, however, the aggrieved party must "'allege (subject to Rule 11) an ability to tender'" any funds advanced by the lender. *See Sipe v. Countrywide Bank*, ___ F. Supp.2d ___, 2010 WL 596322, at *6 (E.D. Cal. 2010) (quoting *Garcia v. Wachovia Mortgage Corp.*, ___ F. Supp.2d ___, 2009 WL 3837621, at *5 (C.D. Cal. 2009)); *cf. Yamamoto v. Bank of N.Y.*, 329 F.3d 1167, 1171 (9th Cir. 2003) ("[R]escission should be conditioned on repayment of the amounts advanced by the lender.") (emphasis omitted).

Borrowers have adequately alleged a violation of TILA that might entitle them to rescission. According to Borrowers, Colonial Savings failed to disclose the proper time period for rescission. On February 28, 2007, when the parties closed the loan, Borrowers received a notice of their right to rescission. The notice, however, allegedly indicated that any right to rescission would expire on March 2, 2007—only two days, rather than three, after the parties closed the loan. And while this appears to be a technical violation, that alone does not foreclose Borrowers from rescinding the loan agreement. *See Williams*, 698 F.2d at 768–69. To the extent that Colonial Savings and MERS argue that Borrowers have not alleged the ability to tender, the Amended Counterclaim indicates otherwise. (*See* Dkt. # 27 at ¶ 9.) In their Amended Counterclaim, Borrowers allege the following:

> [Borrowers] request that the Court rule that the statutory rescission was valid and set a time certain for Colonial to return its money and property. Pursuant to [TILA], after Colonial returns the finance charges and interest paid thus far, and acknowledges that the security interest is void, [Borrowers] will

>  set a time to *tender* back any moneys owed to [Colonial], subject to damage offsets and recoupment for violations of law set forth in these counterclaims.

(*Id.*) This is sufficient to allege an ability to tender and state a claim for rescission.

*(ii) Damages:* Borrowers' claims for damages under TILA, however, are barred by TILA's one year statute of limitations. While TILA "requires creditors to provide borrowers with clear and accurate disclosures of terms dealing with things like finance charges, annual percentage rates of interest, and the borrower's rights[,]" *Beach v. Ocwen Fed. Bank*, 523 U.S. 410 (1998), a claim for damages under the Statute must be brought "within one year from the date of the occurrence of the violation." 15 U.S.C. § 1640(e); *see also Beach*, 523 U.S. at 412. According to the Amended Counterclaim, the transaction between Colonial Savings and Borrowers was consummated on February 28, 2007. (Dkt. #27 at ¶ 3.) Borrowers, therefore, had until February 2008 to file their TILA claim for damages. They did not file their counter/cross claims, however, until November 12, 2009, more than a year past the deadline. (*See* Dkt # 17.) Accordingly, Borrowers' claim for damages is time-barred absent equitable tolling.

As the Ninth Circuit explained in *King v. California*, 784 F.2d 910, 915 (9th Cir. 1986), TILA's one-year limitations period may be extended through equitable tolling when the opposing party fraudulently conceals the operative facts underlying the TILA violation. Under the principle of equitable tolling, the limitations period is tolled when a complainant affirmatively pleads: (1) particularized facts showing that defendant fraudulently concealed the operative facts; (2) failure by the plaintiff to discover the operative facts within the limitations period; and (3) due diligence by the plaintiff until the discovery of the facts. *FEC v. Williams*, 104 F.3d 237, 241 (9th Cir. 1996); s*ee also Rutledge v. Boston Woven Hose & Rubber Co.*, 576 F.2d 248, 250 (9th Cir. 1978) (holding that to successfully invoke the fraudulent concealment doctrine, a plaintiff "must plead with particularity the circumstances surrounding the concealment and state facts showing his due diligence in trying to uncover the facts"). To satisfy this heightened pleading requirement, a party must allege facts demonstrating the "time, place, and specific content" of the alleged concealment. *See*

*Edwards v. Marin Park, Inc.*, 356 F.3d 1058, 1066 (9th Cir. 2004). In this case, Borrowers have not pled fraudulent concealment with sufficient particularity to toll the statute of limitations. Accordingly, their claim for damages under TILA is dismissed with leave to amend.

### (6) RESPA

Borrowers have also stated a claim for damages under RESPA. Here Borrowers allege that Colonial Savings violated RESPA when the lender failed to provide a written explanation or response to Borrowers' July 2009 request for information about their loan. Specifically, Borrowers allege that Colonial Savings violated 12 U.S.C. § 2605(e)(2), which requires a loan servicer to respond to a borrower's inquiry or "qualified written request." *See* 12 U.S.C. § 2605(e). Under the Statute, a qualified written request is a written correspondence that enables the servicer to identify the name and account of the borrower. 12 U.S.C. § 2605(e)(1). A qualified written request further must include either a statement describing why the borrower believes that the account is in error or provides sufficient detail to the servicer regarding other information sought by the borrower. *Id.* After a borrower submits a qualified written request, RESPA requires the loan servicer to respond by making appropriate corrections to the borrower's account, if necessary and, after conducting an investigation, providing the borrower with a written clarification or explanation. 12 U.S.C. § 2605(e)(2). To prevail on a claim under this provision, a complainant must further explain how the servicer's failure to respond to the request "'resulted in actual damages.'" *See Shepherd v. Am. Home Mortg. Servs.*, 2009 WL 4505925, at *3 (E.D. Cal. Nov. 20, 2009) (quoting *Hutchinson v. Del. Sav. Bank FSB*, 410 F. Supp.2d 374, 383 (D. N.J. 2006)); *see also Allen v. United Fin. Mortg. Corp.*, 2009 WL 2984170, at *5 (N.D. Cal. Sept. 15, 2009).

In July 2007, Borrowers sent Colonial Savings a twenty-six page letter, informing the servicer that they were rescinding their loan based on an alleged violation of TILA. (*See* Dkt. # 1, Ex. A.) The letter, which included the caption, "qualified written request," further provided the Borrowers' identity, account information, and contact information. (*Id.* at 1–2.) Borrowers' letter also requested verification of the following:

- 11 -

> That this mortgage account has been credited, debited, adjusted, amortized and charged correctly and disclosed fully commencing with the original loan solicitation through and including any parties, instruments, assignments, letters of transmittal, certificates of asset backed securities and any subsequent transfer thereof.

(Dkt # 1, Ex. A at 12.) The letter further requested confirmation "[t]hat interest and principal have been properly calculated and applied to this loan[.]" (*Id.*) These requests satisfy the requirements of § 2605(e).

Borrowers have also adequately alleged damages resulting from Colonial Savings's alleged failure to respond to this request. Borrowers assert that they have been damaged because Colonial Savings's failure to respond has "plac[ed] a cloud" on the title to Borrowers' property. They also allege that Colonial Savings's repeated refusal to respond creates uncertainty as to the validity of the title to their property. Because RESPA's damages requirement is interpreted "liberally," *Shepherd*, 2009 WL 4505925, at *4, the Court will allow Borrowers to pursue this claim further. It is plausible that a borrower's title would be placed into question by a lender's repeated refusal to provide verification that payments are being correctly applied to reduce the borrower's account balance.

### **(7) Fraud**

Borrowers' claim of fraud fails for lack of particularity. Under Arizona law, a plaintiff must demonstrate the following to prevail on a claim for fraud:

> (1) a representation; (2) its falsity; (3) its materiality; (4) the speaker's knowledge of its falsity or ignorance of its truth; (5) the speaker's intent that it be acted upon by the recipient in the manner reasonably contemplated; (6) the hearer's ignorance of its falsity; (7) the hearer's reliance on its truth; (8) the right to rely on it; (9) his consequent and proximate injury.

*Echols v. Beauty Built Homes, Inc.*, 132 Ariz. 498, 500, 647 P.2d 629, 631 (1982) (citation omitted).

Borrowers' allegations of fraud fail to adequately provide the "who what when, where, and how of the misconduct alleged" in accordance with Federal Rule of Civil Procedure 9(b). *See Kearns*, 567 F.3d at 1124; *see also Swartz v. KPMG LLP*, 476 F.3d 756, 764 (9th Cir. 2007) ("To comply with Rule 9(b), allegations of fraud must be specific enough

to give defendants notice of the particular misconduct which is alleged to constitute the fraud . . . .") (internal quotation marks omitted). Borrowers allege generally that Colonial Savings concealed material information about the identity and nature of the loan. They fail, however, to set identify any specific representations, and they do not "set forth what [wa]s false or misleading" about those representations. *See Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003) ("[A] plaintiff must set forth more than the neutral facts necessary to identify the transaction. The plaintiff must set forth what is false or misleading about a statement, and why it is false.") (emphasis and internal quotation marks omitted). And while Borrowers allege that misrepresentations took place in Arizona and occurred "throughout the entire loan term" (Dkt. # 24 at 17), these allegations do not sufficiently provide the time, place, and date of the alleged misrepresentations. *See Kearns*, 567 F.3d at 1124. Accordingly, Borrowers' claim of fraud is dismissed with leave to amend.

### (8) Declaratory Relief & Injunctive Relief

Borrowers also assert claims for "Declaratory Relief" and an "Injunction" against both Colonial Savings and MERS. Under Arizona law, injunctions and declaratory judgments, generally are not separate causes of action. Instead, they are merely remedies that must be premised on some other legal theory. *See City of Tucson v. Clear Channel Outdoor, Inc.*, 218 Ariz. 172, 187, 181 P.3d 219, 234 (Ct. App. 2008) ("An injunction is an equitable remedy . . . .") (internal quotations omitted); *McMann v. City of Tucson*, 202 Ariz. 468, 474, 47 P.3d 672, 679 (Ct. App. 2002) (noting that a declaratory judgment "remedy" is available "'to declare rights, status, and other legal relations'") (quoting Ariz. Rev. Stat. § 12-1831); *Land Dept. v. O'Toole*, 154 Ariz. 43, 47, 739 P.2d 1360, 1364 (Ct. App. 1987) ("The declaratory judgment procedure is not designed to furnish an additional remedy where an adequate one exists.").

In this case, Borrowers' TILA and RESPA claims survive Colonial Savings's and MERS's Motion to Dismiss. Accordingly, to the extent that an injunction and/or declaratory relief are proper remedies for the alleged violations, Borrowers may pursue these remedies as this action goes forward.

**(9) Quiet Title**

Finally, Borrowers raise a state-law claim for quiet title to the property that is subject to the mortgage obtained from Colonial Savings. Under Arizona law, a quiet title action seeks the Court's equitable ruling that an individual is the rightful owner of real property. *See In re Roca*, 404 B.R. 531, 539 (Bankr. D. Ariz. 2009) ("Under Arizona law, a court may, in equity, quiet title in the individual that is the rightful legal and equitable owner of real property."); *Chantler v. Wood*, 6 Ariz. App. 134, 138, 430 P.2d 713, 717 (1967) (finding that a quiet title action "is one of equitable cognizance and that every interest in the title to real property, whether legal or equitable, may be determined in the action"). Pursuant to Arizona Revised Statute § 12-1102, a complaint for quiet title must: (1) "be under oath;" (2) "set forth . . . the nature and extent of plaintiff's estate;" (3) "describe the premises;" (4) "state that plaintiff is credibly informed and believes defendant makes some claim adverse to plaintiff;" and (5) "pray for establishment of plaintiff's estate and that defendant be barred and forever estopped from having or claiming any right or title to the premises adverse to plaintiff." Ariz. Rev. Stat. § 12-1102. In addition, to obtain quiet title, a party "must assert some legal or equitable theory for why he is the rightful owner." *Silvas*, 2009 WL 4573234, at *6.

Borrowers' claim for quiet title does not meet the requirements of § 12-1102 because it is not under oath. *See* Ariz. Rev. Stat. § 12-1102. Moreover, Borrowers have not alleged that anyone has made an adverse claim to their property. *See id.* Inasmuch as Borrowers are current on their payments, neither MERS or Colonial Savings has attempted to make some claim adverse to Borrowers' property. Accordingly, Borrowers' claim for quite title is dismissed with leave to amend.

**II.  Colonial Savings's and MERS's Motions to Strike Are Denied**

Colonial Savings and MERS also move to strike portions of Borrowers' counter-claims, cross-claims, and affirmative defenses. (Dkt. ## 21, 22.) Pursuant to Federal Rule of Civil Procedure 12(f), the Court may strike from any pleading "any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). "Motions to strike are generally viewed with disfavor, and will usually be denied unless the allegations in the pleading have

1 no possible relation to the controversy, and may cause prejudice to one of the parties." *Osei*
2 *v. Countrywide Home Loans*, ___ F. Supp.2d ___, 2010 WL 727831, at *4 (E.D. Cal. 2010)
3 (citation omitted). Where the Court is uncertain whether the challenged matter may raise an
4 issue of fact or law, the motion to strike should be denied, leaving an assessment of the
5 sufficiency of the allegations for adjudication on the merits. *Id.*

6 In their Motions to Strike, Colonial Savings and MERS argue extensively that Borrowers' Amended Counterclaim contains redundant, immaterial, impertinent, and scandalous matters. There is no reason to believe, however, that Colonial Savings and MERS will be prejudiced by the allegations raised in the Amended Counterclaim. Moreover, at this point in the proceedings, the Court is not certain that the various allegations raised in the Amended Counterclaim will have absolutely no relation to the controversy at issue. Accordingly, the Motions to Strike are denied.

### III. Colonial Savings's and MERS's Motion for a More Definite Statement Is Denied.

Colonial Savings and MERS also request a more definite statement. (Dkt. # 22.) Under Federal Rule of Civil Procedure 12(e), a motion for a more definite statement should not be granted unless a pleading is "so vague or ambiguous that a party cannot reasonably be required to frame a responsive pleading." Fed. R. Civ. P. 12(e). This liberal standard is consistent with Federal Rule of Civil Procedure 8(a)(2) which allows pleading that contains a "short and plain statement of the claim." *See* Fed. R. Civ. P. 8(a)(2). The Rules of Procedure further anticipate that the parties will familiarize themselves with the claims and facts through the discovery process. *See Famolare, Inc. v. Edison Bros. Stores, Inc.*, 525 F. Supp. 940, 949 (E.D. Cal. 1991) (citing Wright and Miller, Federal Practice and Procedure, Civil § 1377 at p. 750 (1969)). Accordingly, "[w]here the information sought" by the moving party "is available through the discovery process, a Rule 12(e) motion should be denied." *Castillo v. Norton*, 219 F.R.D. 155, 164 (D. Ariz. 2003) (Quotation omitted).

Colonial Savings and MERS fall far short of the standard necessary to prevail on their Motion for a more definite statement. While Borrowers' Amended Counterclaim may not be a "paradigm of clarity," it is not "so vague or ambiguous that a party cannot reasonably be

1 | required to frame a responsive pleading." *See Natomas Gardens Inv. Group v. Sinadinos*, ___
2 | F. Supp.2d ___, 2010 WL 1659970, at *5 (E.D. Cal. 2010) (citing Fed. R. Civ. P. 12(e)). The
3 | Amended Counterclaim adequately alleges the underlying factual circumstances giving rise
4 | to those claims that survive dismissal. Accordingly, "[s]ufficient details have been given" in
5 | Borrowers' Amended Counterclaim, so that the parties can "further familiarize themselves
6 | with the claims and ultimate facts through the discovery process." *Id.* (citation omitted).

**IT IS THEREFORE ORDERED:**

1. The Motion to Dismiss Borrowers' Counterclaim (Dkt. # 20) is **GRANTED IN PART** and **DENIED IN PART**. Each of Borrowers' claims, aside from their TILA claim for rescission and their RESPA claim for damages, are dismissed with leave to amend. To the extent that Borrowers seek to further pursue the dismissed claims, they **SHALL** file a Second Amended Counterclaim and a redline copy of that pleading by **12:00 p.m. on June 18, 2010**.

2. The Motion to Strike Portions of Borrowers' Counterclaim and Cross-claim (Dkt. # 21) is **DENIED**;

3. The Motion to Strike Portions of Borrowers' Answer and Affirmative Defenses (Dkt. # 22) is **DENIED**;

4. The Motion for a More Definite Statement (Dkt. # 22) is **DENIED**.

DATED this 18th day of May, 2010.

_____
G. Murray Snow
United States District Judge